*Burbank*
*v.*
*Whitney.*

―――

## LAWSON LONG *versus* JOSEPH MERRILL.

Where three tenants in common of a parcel of land nearly in the form of a parallelogram, the east side being a little longer than the west, made a partition by deed by straight lines running from the east side to the west, and the monuments of the division were not to be found, but the divisions of the east side were ascertained by the measurements given, it was *held*, that the west side should be divided in the same proportions.

THIS was an action of trespass *quare clausum*, brought to try a question of boundary.

At the trial it appeared, that the defendant, with Apollos Barnard and Samuel Morse, were the owners and tenants in common of a parcel of land in Shelburne, containing, according to a plan exhibited, seven acres and seventy rods, the northerly boundary line being in length twenty-seven rods, fifteen links ; the southerly twenty-six rods, twenty links ; the easterly, forty-six rods, four links ; and the westerly, forty-two rods.

On the 20th of March, 1835, Merrill, Barnard, and Morse made partition of the land, by three deeds of quitclaim, as follows.

Merrill and Morse conveyed to Barnard a piece of land, " beginning at the southwest corner of Nathaniel and Silas Lamson's land on the east side of the county road near the academy ; thence easterly on said Lamsons' land, twenty-seven and one half rods to a stake and stones at Martin Severance's northwest corner ; thence southerly on said Martin's land, twenty-five and one half rods, to a stake and stones ; thence westerly, on land of Joseph Merrill, to the county road, about twenty-seven rods, to a stake and stones ; thence northerly on said county road, to the first mentioned corner ; estimated at four acres, more or less." ·

Barnard and Morse conveyed to Merrill a piece of land, " beginning at the northwest corner of said lot, at a stake and stones ; thence running easterly on land of Apollos Barnard, to a stake and stones on Martin Severance's west line ; thence southerly, on said Severance's land, nine rods and seventeen links, to a stake and stones ; thence westerly on land of Samuel Morse, to a stake and stones, to the county road ; thence northerly on said road to the first mentioned corner ; estimated at one and one half acres, more or less."

Barnard and Merrill conveyed to Morse a piece of land, " beginning at a stake and stones at the northwest corner of said lot ; thence running easterly on land of Joseph Merrill, to a stake and stones on Martin Severance's west line ; thence southerly on land of said Martin, to land of Ebenezer Thayer and Apollos Barnard, nine rods and seventeen links ; thence westerly on land of said Ebenezer and Apollos, and Samuel Morse, to the county road ; thence northerly on said road to the first mentioned bound ; estimated ·at one and one half acres, more or less."

Barnard, by his deed of warranty, dated the 25th of August, 1835, conveyed to Alden and Lamson a lot of land, " beginning at the northeast corner of said lot at a stake and stones ; thence westerly, on land of the proprietors of the Franklin Academy and Nathaniel and Silas Lamson, to the county road ; thence southerly on said road, to land of Joseph Merrill ; thence easterly, on land of the said Joseph and Ebenezer Thayer, to a stake and stones ; thence northerly on land of Martin Severance, to the first mentioned bound ; containing six and three fourths acres."

Alden and Lamson, by their warranty deed of April 29th, 1836, conveyed to the plaintiff a tract of land, " beginning at the southwest corner of said lot on the county road, opposite the meetinghouse, at a stake and stones ; thence easterly, on land of Joseph Merrill and Ebenezer Thayer, to a stake and stones ; thence northerly, eight rods, on land of Martin Severance, to a stake and stones ; thence westerly, on land of said Cyrus and Nathaniel, (the grantors,) to a stake and stones ; thence southerly, on the county road, eight rods, to the first mentioned bounds ; containing two acres and twenty-six rods."

The plaintiff alleged that the defendant's north boundary was where a notch was cut in the fence about sixteen rods north of the southwest corner of the lot owned in common as above mentioned.

One Townley testified, that the defendant pointed out the line ; that he said they marked with chalk, and made a notch in the fence at his northerly bound, an inch deep, wide enough to lay in two fingers ; that the witness saw the notch in the autumn of 1838 ; that afterwards the defendant said there was a mistake in the measure ; that stakes were put up where the fence was built ; and that the fence was up when the plaintiff purchased.

One Steel testified, that he helped to put up the fence in May 1835 ; that it was run by directions of Barnard and Merrill ; that in May 1838, by Merrill's directions, he moved the fence further north.

Barnard, called by the defendant, testified that they divided the land by agreement ; that they surveyed the lot ; that they

Long
v.
Merrill.

began at the southwest corner; that they ran eighteen rods two feet, nearly; opposite the meetinghouse some feet on; that he never saw the notch; that he did not know how they ascertained the direction to build the fence; that they had some mark, he presumed, but he could not recollect what; that the notch was sixteen rods, two feet, nearly, from the south line; that he could not say how far they ran, except that it was their intent to run that distance; that he could not say whether they measured where they built the fence; and that he thought they first measured the whole lot.

Morse testified, that Barnard and Merrill carried the chain; that they began at the southwest corner; that they marked on the fence with chalk, every two rods; that the lot contained over seven acres; that they made a notch on a post at nine rods; that he did not remember that any notch was made at Merrill's corner; that he thought Merrill's share was counted off; and that he agreed with Merrill to divide the eighteen rods after the whole lot was measured.

If upon the evidence a verdict for the defendant could be sustained, the plaintiff was to become nonsuit; if not, a new trial was to be granted.

*Sept. 27th, 1839.*

*Wells* and *Davis*, for the plaintiff, cited *Howe* v. *Bass*, 2 Mass. R. 382; *Belden* v. *Seymour*, 8 Connect. R. 19; *Esmond* v. *Tarbox*, 7 Greenleaf, 61; *Makepeace* v. *Bancroft*, 12 Mass. R. 469; *Lerned* v. *Morrill*, 2 N. Hamp. R. 197; *Cudney* v. *Early*, 4 Paige, 209; *Linscott* v. *Fernald*, 5 Greenleaf, 496; *Wade* v. *Howard*, 6 Pick. 492; *Van Wyck* v. *Wright*, 18 Wendell, 157; *Owen* v. *Bartholomew*, 9 Pick. 527.

*I. C. Bates* and *Aikin*, for the defendant, cited 3 Dane's Abr. 401; *Whitney* v. *Holmes*, 15 Mass. R. 152; 9 Dane's Abr. 294; *Waterman* v. *Johnson*, 13 Pick. 261; *Allen* v. *Kingsbury*, 16 Pick. 238.

*Sept. 28th, 1839.*

MORTON J. delivered the opinion of the Court. This action, though trespass, was intended to try the plaintiff's title to the *locus in quo*, and to establish the line between the parties. The deed under which the plaintiff claims describes the boundaries of his land as follows, viz: " Beginning at the southwest corner of said lot on the county road, opposite the meet-

inghouse, at a stake and stones ; thence easterly on land of
Joseph Merrill and Ebenezer Thayer to a stake and stones ;
thence northerly eight rods, on land of Martin Severance to a
stake and stones ; thence westerly on land of said Cyrus and
Nathaniel (the grantors) to a stake and stones ; thence south-
erly on the county road eight rods to the first mentioned
bounds." In a deed so recent, and with a description in it-
self so definite and precise, we should anticipate no difficulty
about boundaries. But as neither of the monuments mentioned
in the deed, nor the place of their location, can be ascertained,
and as the other objects referred to are in themselves some-
what uncertain, it is not easy to fix the true lines of this lot.
The east and west lines are fixed, by the agreed line of an ad-
joining owner and by the highway. Nothing marks the north-
ern line, and it can be ascertained only by its distance from the
southern line. By the deed, the north and south lines are
parallel and at the distance of eight rods from each other. The
plaintiff's southern line is described as running " easterly on
land of Joseph Merrill," the defendant. As the monuments
mentioned cannot be found, and as there is no reference to any
other object, the only method of determining the plaintiff's
southern line is by ascertaining the defendant's northern line.
Nor can we gain any additional light by tracing the plaintiff's
title further back. His grantors' deed describes the westerly
line as running southerly " to land of Joseph Merrill," and the
southerly line as running " easterly on land of the said Jo-
seph." So that in both deeds the plaintiff's land is bounded
on the south by the land of the defendants. Our inquiry
therefore must be for the true line of the defendant's land.

A boundary by or upon land of a third person may refer to
land owned by him, or in his possession. If he owns land,
the reference will of course be to his title. But if he only
has the possession of land in that direction, this must be con-
strued to refer to land in his possessory right. But when
he holds land by possession and by title, the reference will be
to the latter. In this case, the fence, which stood for a year
or two, though it may be a circumstance worth consideration
in ascertaining the true boundary, cannot prevail against it.
9 Dane's Abr. 294 ; *Stuart v. Luddington*, 1 Randolph, 403 ;

Long
v.
Merrill.

*Whitney* v. *Holmes*, 15 Mass. R. 162.   Indeed its existence was of so short duration, that it cannot have much weight in any view of the case.

We must now advert to the defendant's title, and ascertain from that, if we can, the northern boundary of his land.

The defendant and two others were tenants in common of a tract of land, of which the lots of the plaintiff and defendant are parts.   These tenants made a partition of their land in a mode ·neither unusual nor inconvenient, by executing quit-claim deeds to each other.   In these deeds, which should be construed together as if one instrument, the several parcels are bounded upon each other ; which has no tendency to locate and fix the dividing lines.   Each of these lines is designated by a stake and stones at each end.   But none of these monuments can be found ; and probably they existed only in anticipation, but were never erected.   We are therefore left without any aid from monuments.

The law is perfectly well settled on this subject.   Monuments, when ascertained must prevail, whether they coincide with courses and distances and occupation, or not.   *Howe* v. *Bass*, 2 Mass. R. 380 ; *Belden* v. *Seymour*, 8 Connect. R. 19 ; *Esmond* v. *Tarbox*, 7 Greenleaf, 61 ; *Lerned* v. *Morrill*, 2 N. Hamp. R. 197.   And this doctrine extends even to monuments not in existence when the deed is made, but erected afterwards in pursuance of the agreement and understanding of the parties.   *Makepeace* v. *Bancroft*, 12 Mass. R. 469. But to give to monuments this controlling force, they must be *the monuments* described in the deed.   Other monuments or bounds may have more or less influence in establishing a line, according to their antiquity and other circumstances.   A recent fence or monument erected after the execution of the deed, can have but little weight.   *Owen* v. *Bartholomew*, 9 Pick. 527.

There is no doubt that parol evidence is admissible to show the existence or non-existence of monuments, whether referred to in the deed or not, and all other external objects which may have any bearing upon a question of boundary.   3 Dane's Abr. 401 ; *Dogan* v. *Seekright*, 4 Hen. & Munf. 125 ; *Waterman* v. *Johnson*, 13 Pick. 261.   But here no monument

was shown to exist at any time. It is true, in measuring the land for the purpose of making a division, certain marks were made with chalk instead of tallies, and one notch was cut in the fence. But none of these were intended for landmarks. Had the deed referred to the notch, it would unquestionably, if it could have been located, have fixed the line. But as the deed did not mention it, but expressly described another bound at the same corner, it is conclusive that this was not intended to be a monument. The existence of the notch, therefore, if ever so clearly proved, will not materially aid us. We must look to other and less certain sources of proof. And even slight circumstances, in the absence of stronger evidence, may have a preponderating influence.

In this state of the case, one circumstance contained in the plaintiff's deed is not without its weight. His southwest corner, where he commenced his description, is said to be " opposite the meetinghouse." Although this is too large an object to fix a line within a few feet, yet the defendant's line is more nearly opposite than the plaintiff's. Again, the quantities mentioned in the three deeds better accord with the defendant's line than with the plaintiffs. Some argument may also be drawn from the form of the lots. But the circumstance having the most weight in our minds, is the length of the lines. In the absence of stronger proof, admeasurement must prevail. At the east end where there is no dispute about the corner, two of the three lots are described as nine rods and seventeen links each in width, and the other twenty-five and a half rods. The length of the west line is not given. Under such circumstances and in the absence of other proof, the legal presumption would be, that they ran parallel to each other. But as the east line of the original lot was longer than the west, this rule could not prevail. But there is no reason why we should not approximate as nearly to it as the facts will permit and divide the west line into the same proportions as the east. This will leave to the defendant, with unusual exactness, the amount which he claims. And in our opinion these circumstances would well warrant a verdict for the defendant.

*Plaintiff nonsuit.*